## Baker *v.* Pitt Construction Company (Liberty Mutual Ins. Co., Appellant).

Argued November 9, 1936.

Be-

fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John Paul Erwin,* for appellant.

No appearance was made, nor brief filed, for appellee.

OPINION BY PARKER, J., December 11, 1936:

In this proceeding under the Workmen's Compensation Law, the referee, the board and a court of common pleas held that the claimant was entitled to compensation for the death of her husband. There is no new or novel proposition of law involved on this appeal, the sole question being whether there is sufficient evidence to support a finding of fact that there was a causal connection between an accident which the husband, Wm. T. Baker, suffered on July 1, 1933 and his death on November 29, 1933.

We will refer to the evidence which it is alleged supports the findings. Baker had placed two skids against the rear of a truck and was engaged in unloading large valves from the truck with the aid of a crowbar. In some manner he fell from the truck to the ground, a distance of four and one-half feet, striking his shoulder and apparently also his head. One of defendant's witnesses testified: "As I saw the accident, the shoulder hit the ground first. Naturally his head hit the ground after his shoulder. His head came down naturally." Due to blasting there were loose stones on the ground.

When two fellow workmen reached him he was lying on the ground, curled up between the two skids holding his head between his hands, moaning and writhing in agony and frothing at the mouth. After resting for about fifteen minutes he accompanied the driver on another trip but complained of being unable to stand the jarring of the truck and shifted his position on it. He left his work and returned home before noon when his wife observed that he was weak, pale and gasping for breath. He showed his wife his head and she observed that "there was a depression right above his left ear enough visible to the eye". Four days later he was treated at the Lancaster General Hospital, when his shoulder was examined, but no examination was made of his head by the physician in charge. An interne did make a cursory examination of the head, as he testified, by hurriedly sweeping the hair aside on each side of the head. This examination, the interne admitted, might easily have failed to reveal a depression in the head of the sort which might indicate a trauma. The physician in charge testified that no examination was made of the head because deceased failed to complain concerning an injury there. Baker was sent home with his right arm in a sling and was unable to use his right arm or his right leg. He returned to work on July 21, 1933, but the testimony of neighbors and fellow workmen shows that he was a changed man, that prior to the accident he was alert, wide awake, in good health and in good physical condition, while after the accident he was frequently found sitting with his hands on his head, his right arm was weak, he favored his left side in lifting, he had difficulty in driving his automobile, he frequently became mixed in his signals in the operation of a crane, and he failed to recognize people and seemed to be in a stupor.

On September 28, 1933, he suffered a collapse while

opening the doors of his garage. He was immediately taken to St. Joseph's Hospital where he remained in a state of coma most of the time until his death. He could not be aroused or carry on conversation. At that time an examination by the physicians disclosed a depression on the left side of the head. This was followed by an X-ray examination which revealed a depression of both layers of the skull in the center of the lower half of the left parietal bone and part of the temporal bone over an area of 2/10th inches. There appeared to be a fracture at the upper region of the depression where there was a specule of bone protruding on the inner side. The patient improved somewhat after a trephine operation, but finally died on November 29, 1933. Experts called by both the claimant and the defendant testified that the death was due to an abscess of the brain which was due to trauma. A post mortem examination confirmed that opinion. There was a dispute among the experts as to whether the trauma was the result of the accident of July 1, 1933, some contending that the injury to the skull had occurred at an earlier date. However, testimony of experts was furnished by the claimant to the effect that the abscess was due to trauma suffered in the accident of July 1, 1933. In addition, the referee called an impartial physician who gave his professional opinion to the effect that Baker died as a direct result of a depressed fracture on the left side of his skull which occurred on July 1, 1933. One expert, an eminent surgeon, called by the defendant, attributed the death entirely to a stroke which he asserted had no connection with trauma.

The appellant centers its attack on the finding of causal connection between the accident of July 1, 1933 and the death in November, and specifically on that part of the finding which asserts that the trauma, the depression to and fracture of the skull, occurred at the time the husband fell from the truck. Much that coun-

sel for defendant says would be persuasive if this court were a fact finding body, but that is not our province. There was evidence to which we have not referred that tended to sustain appellant's contention, and the referee and board could have come to a different conclusion, but we cannot reverse the findings of fact unless there is no evidence to support them.

A brief repetition of some of the facts will demonstrate that there was evidence which, if credited by the board, would sustain the findings of fact. Prior to the accident Baker was a well man, physically strong. He fell and struck his head on the ground where there were loose stones. He was incapacitated for work and returned home where he exhibited his head to his wife, who noticed a depression at a point where the physicians a month later found a depression and fracture. Immediately after the accident he held his head and was in great agony, frothing at the mouth. During the period in August and September when he worked, he indicated symptoms which we have detailed and which to a layman might well denote an injury to the head. But the claimant did not rest here, for the history of the injury was submitted for consideration by experts who gave it as their professional opinion that the history was consistent with a conclusion that the trauma which caused the abscess occurred on July 1, 1933, and some testified that it did in fact occur on that day. The facts disclosed a situation where it was fitting that laymen, referee or board, should have the advice of specialists as to the progress of the injury and the effect of the time elements involved. The impartial witness called by the referee supported the testimony of claimant and her experts. Under such circumstances we cannot say that a man exercising average reasoning power could not come to the conclusion reached by both referee and board. We are all of the opinion that the judgment should be affirmed.

Judgment affirmed.